# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## ROANOKE DIVISION

| | | |
|---|---|---|
| **In re:** | ) | **Chapter 7** |
| | ) | |
| **NITTANY ENTERPRISES, INC.** | ) | |
| | ) | **Case No. 11-70779** |
| | ) | |
| | ) | |
| **Debtor.** | ) | |

## DECISION AND ORDER

At Roanoke in said District on this 6th day of July, 2012:

A hearing was held on March 13, 2012 to consider the Chapter 7 Trustee's Objection to Claim No. 1-1 of Kerry and Martha Boyer and Claim No. 28 of John and Wanda Reed. After considering the evidence provided at the hearing and the arguments of the parties the Court makes the following findings of fact and conclusions of law.

### Background

The Debtor was a franchisee of DirectBuy, a national organization that offers members access to "confidential inside prices" from over seven hundred manufacturers on home furnishings and home goods. The Debtor operated a show room in Roanoke, but all customer purchases were run through DirectBuy, the franchisor. The two claims that have been objected to by the Chapter 7 Trustee are claims by customers who purchased DirectBuy memberships and seek a refund after the local showroom in Roanoke closed.

Kerry B. Boyer and Martha A. Boyer (collectively, the "Boyers"), filed a claim in the amount of $1,250.73, which they assert is entitled to priority treatment under section 507(a)(7). The Boyers state the basis for their claim is "goods and services sold via Membership Agreement/Retail Installment Contract." The Boyers assert that they paid a $1,000 down

payment toward their membership and financed the remainder of their membership fee with Beta Finance Company. The Boyers assert that they have a claim consisting of their down payment of $1,000 and two monthly installment payments of $125.73 they made to Beta Finance.

The Trustee objects to the Boyers' claim on three grounds. First, Nittany did not breach the Membership Agreement prior to the commencement of the Case and the rejection of the Membership Agreement did not constitute a breach of the Membership Agreement. There is no provision of the Membership Agreement that required Nittany to operate a DirectBuy dealership in Roanoke, Virginia. As a result, there is no duty owed by Nittany under the Membership Agreement that is not being fulfilled as it relates to the Boyers.

Second, even if there has been a breach of the Membership Agreement by Nittany, the amount claimed by the Boyers is not the quantum of their damages. In fact, the Boyers have not suffered any damages that would give rise to a claim. The Boyers' purchase of a membership from Nittany granted them a membership in the DirectBuy buying organization, which according to the DirectBuy website, permitted the Boyers to have access to "confidential dealer prices on over 700 trusted top brand names for just about everything you need in your home." As the DirectBuy website indicates and the Boyers acknowledge in their pleading, a DirectBuy member can shop on their website or at a DirectBuy dealership. The Boyers retain all of their rights to purchase goods through DirectBuy under the Membership Agreement. However, the Boyers assert they have a claim because they do not want to shop through the DirectBuy website and that their damages arising from Nittany's closing of the Roanoke showroom is the amount they have paid in membership fees.

Third, the Trustee argues that to the extent the Boyers have a claim for damages,

such a claim is not a "deposit" within the meaning of section 507(a)(7). Section 507(a)(7) establishes priority status for claims of individuals, to the extent of $2,600 "arising from the deposit, before the commencement of the case, of money in connection with the purchase…of property or the purchase of services, for the personal family or household use of such individuals, that were not delivered or provided." 11 U.S.C. § 507(a)(7). According to the Trustee, the Boyers agreed to pay the entire purchase price at the time of they signed the Membership Agreement. They did so by making a $1,000 "Member Downpayment" and by obtaining a loan for the remaining balance of the membership fee from Beta Finance Company, Inc. ("Beta"), which paid the remaining portion of the membership fee to Nittany in full. The Trustee argues that neither the Member Downpayment, the payment of the balance of the membership fee by Beta, nor the two payments made by the Boyers on the loan obligation they have with Beta constitute a "deposit." These payments were not a partial payment that established their right to receive goods or services upon the completion of the payments. Nothing in the Membership Agreement indicates that any portion of the payment made to Nittany was intended to be security for the future provision or delivery of goods or services and upon the payment of the entire membership fee, which occurred contemporaneously with the signing of the Membership Agreement, the rights of the Boyers to be members of the DirectBuy buying organization were fully vested. As a result, the Boyers' claim is not a "deposit" and therefore not a claim entitled to priority treatment under section 507(a)(7).

The Boyers argue that they entered into the membership agreement with the Debtor to directly examine products from the local showroom in Roanoke, Virginia, without having to travel to one of the other 140 locations in North America and thus bear the additional

cost of travel as well as consumption of time. The Boyers entered the membership agreement to physically see, touch and personally examine the actual merchandise offered by Debtor and not to look at pictures of the merchandise on the Internet prior to purchase.  Under the three year membership agreement, the Boyers would have had approximately one-thousand ninety-three (1093) days to utilize the local showroom, instead the Boyers had a total of fifty (50) days to utilize the showroom, a difference of one-thousand forty-three (1043) days.  This equates to approximately 95% of the days being unusable.  The Boyers' argue that the return of their down payment is the quantum of their damages, damages which are recoverable for loss that was reasonably foreseeable by the Debtor at the time of contracting.

John Reed and Wanda Reed (collectively, the "Reeds"), by counsel, filed a general unsecured claim in the Case in the amount of $3,890.  The Reeds state the basis for their claim as "Membership fees for 'lower' cost buying club."  Documentation attached to their claim indicates that the Reeds paid the entire membership fee with a Discover credit card.  The letter attached to the claim explains that the Mrs. Reed visited the DirectBuy store in Roanoke approximately three times and on her fourth visit found the store closed.

The Trustee objects to the Reeds' claim on same grounds that he objects to the Boyer's claims.[1]  The Reeds claim that access to other DirectBuy locations and the DirectBuy website is insufficient because Mrs. Reed is disabled and the locality of the show room was a motivating factor for a purchase of the membership.  In addition, the Reeds contend that Mrs. Reed informed the store of her physical disability before purchasing the membership and mentioned that the ability to get assistance in the store was an important factor in her decision to

---

[1] The Reeds do not claim priority status for their claim.

buy a membership. The Reeds contend that the internet option is insufficient because it does not allow them to directly see and touch the various products they may contemplate purchasing.

## Discussion

The Chapter 7 Trustee's objections to both claims share two common questions. The first is whether there was a material breach of contract so as to give the claimant a claim as defined by the Bankruptcy Code. The second is that even if there is a material breach leading to a claim, whether the claimed amount is the quantum of the claimants damage. Finally, the Trustee disputes that the Boyer's claim should be given priority under 11 U.S.C. 507(a)(7).

All claims are allowed unless a party in interest objects. 11 U.S.C. § 502(a). If a party in interest objects, the Court, after notice and hearing, will determine the amount of the claim. 11 U.S.C. § 502(a). An alleged material breach of a contract is the basis for the claims at issue in this case.[2] The contract is termed the "DirectBuy Membership Agreement." The Membership Agreement explicitly incorporates the "DirectBuy Membership Guide" into the contractual agreement of the parties. The Trustee has put the DirectBuy Membership Agreement (the "Agreement") and the Membership Guide (the "Guide") into evidence.[3]

### I. Breach of Contract

In determining whether the Debtor breached the terms of the contract documents the Court is confined to the four corners of the documents unless ambiguity permits admission of parole evidence to aid in interpreting the terms. When the contract documents are examined, it is

---

[2] 11 U.S.C. § 101(5)(B) defines a claim to be a "right to an equitable remedy for breach of performance if such breach give rise to a right to payment, . . . ."

[3] These documents, collectively the "contract documents," constitute the written agreement of the Debtor and the claimants.

clear that the parties agreed that a member would be entitled to shop at any of DirectBuy's showrooms and via the internet.  There is no contractual provision that vests in the claimants a right to shop exclusively at the Nittany showroom in Roanoke.   Further there is no language in the contract documents that defines what constitutes a local showroom.

The Membership Guide mentions the local show rooms frequently and sets forth the benefits of having a local showroom.   The Membership Guide states that members have access to all of samples of home goods in one place so that one can properly plan the decoration of a room, and that with proper planning, a member can bring their decorator or other home design professional with them to plan a renovation.  In addition, the Membership Guide explains that shipments from vendors can be sent to the local showroom, that all shipments are inspected upon delivery; and that if anything is wrong with the shipment, the local showroom, will contact the vendor and try to resolve any issue as quickly as possible.  While the Buyers Guide provides information about the benefits of shopping through the local showroom it does not alter the promises of the membership agreement that members may shop at showrooms or on the internet.

The Court finds that the agreement between the Debtor and the claimants involved a payment by the claimants to the Debtor in return for access to the membership benefits of DirectBuy through a network of show rooms located throughout North America and via the internet.  It is clear from the Membership Guide that a selling point of the DirectBuy membership is the local showroom.  However, there is no specific promise in the contract documents that a local showroom, by itself, is a requirement.  Thus, when the Nittany showroom closed, there was no breach of performance under the contract documents.  Further, there is no evidence to support a right to payment in the form of a refund of the membership fee.  The Court

finds that the DirectBuy Membership agreement was not breached by the closing of the Debtor's local showroom. Accordingly, it is

## ORDERED

That the Boyers' claim (Claim # 1-1) and Reeds' claim (Claim #28-1) are **DISALLOWED**.

Copies of this Order are directed to be sent to counsel for Kerry and Martha Boyer, Sarah Timers, Esquire; to John and Wanda Reed, 3606 Rutrough Road, Roanoke, Virginia 24014; to the Chapter 7 Trustee, William E. Callahan, Esquire; and to counsel for the Debtor, Compton M. Biddle, Esquire.

*/s/ Ross W. Krumm*
_____

Ross W. Krumm
U. S. Bankruptcy Judge