**UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**ROANOKE DIVISION**

| | | |
|---|---|---|
| In re: | ) | **Chapter 11** |
| | ) | |
| **NITTANY ENTERPRISES, INC.** | ) | **Case No. 11-70779** |
| | ) | |
| Debtor. | ) | |

**MEMORANDUM OPINION**

At Roanoke in said District this 30th day of October, 2012:

On September 11, 2012, the Court held a hearing on the Chapter 7 Trustee's (the "Trustee") Objection to Claim #8-1 of Daniel Porter. After considering the evidence provided at the hearing and the arguments of the parties, the Court makes the following findings of fact and conclusions of law.

<u>**Background**</u>

Nittany Enterprises, Inc., the Debtor herein, ("Debtor" and sometimes "Nittany") was a franchisee of DirectBuy, a national buying organization that offers its members access to "confidential inside prices" from over seven hundred manufacturers of home furnishings and home goods. The Debtor operated a showroom in Roanoke that allowed members to view various products available for purchase through catalogs located in the Debtor's showroom. If purchased, the manufacturer shipped these products directly to the customer; Debtor did not maintain an inventory, other than display products in its showroom. After experiencing months of financial difficulty, Nittany Enterprises closed its doors the first week of February, 2011. On April 8, 2011, Nittany Enterprises filed a voluntary petition under Chapter 7 of Title 11, United States Code (the "Bankruptcy Code" or the "Code").

1

Daniel Porter (the "Claimant") and his wife entered into a membership agreement

with the Debtor on November 29, 2008 (the "Agreement"). After Nittany filed its Chapter 7

case, the Claimant timely filed a proof of claim in the amount of $6,000, which he asserts is

entitled to priority treatment under the Code.[1] Mr. Porter states the basis for his claim is "I paid

6,000.00 for services and received nothing."[2] He explained during the hearing on this matter that

he paid $500.00 toward the $5,000.00 membership fee and financed the rest through Beta

Finance Company, Inc. ("Beta"), a corporate subsidiary of DirectBuy. The $6,000.00 claim,

according to Mr. Porter, consists of the $500.00 he paid towards the membership fee and

approximately $5,500.00 he paid in principal and interest to Beta towards the financing of his

membership.[3]        The Trustee objects to the Claimant's proof of claim on five grounds.

First, the Trustee asserts that the Debtor did not breach the Agreement prior to the

commencement of the case and the rejection of the Agreement did not constitute a breach

thereof. Additionally, the Trustee asserts that there is no provision in the Agreement that requires

the Debtor to maintain its franchise in Roanoke, Virginia. As such, there is no duty owed by the

Debtor under the Agreement that was and is not being fulfilled as it relates to the Claimant.

Second, assuming a breach has occurred, the Trustee asserts that the Claimant has

not suffered damages that would give rise to a claim, let alone a claim for $6,000.00. In support

of this assertion, the Trustee points to the DirectBuy website that allows members to shop for the

---

[1]Claimant's proof of claim failed to state the Code section he relies upon in asserting his priority status. The Chapter 7 Trustee has challenged Claimant's assertion under section 507(a)(7) and the Court believes this to be the section upon which the Claimant intended to rely.

[2]*See* Claim # 8-1 dated June 8, 2011, *In re Nittany Enterprises, Inc.* (Bankr. W.D. Va.) (No. 11-70779).

[3]Transcript of Record at 30, *In re Nittany Enterprises, Inc.* (Bankr. W.D. Va) (No. 11-70779) (ECF No. 177).

same products, at the same prices offered in the local showrooms. The fact that the Claimant purchased his membership to shop in the local showroom and prefers to shop there does not limit the Claimant from exercising his ability to shop through the DirectBuy website. The breach of the Agreement, therefore, does not entitle the Claimant to a claim equal to the purchase price, if anything at all.

Third, assuming a breach has occurred, the Trustee asserts that the Claimant is not entitled to priority status under section 507(a)(7) because the $500 paid by the Claimant is not a deposit within the meaning of that provision.[4] The Trustee asserts that by signing the Agreement, the Claimant agreed to pay the purchase price and was vested with the full benefits of membership from that moment onward. According to the Trustee, the $500 "Member Downpayment" and monthly payments made to Beta, who financed the purchase price, are not deposits because they were not partial payments that established a right to receive goods or services upon the completion of the payments.[5] As such, the Claimant has not made a deposit and his claim is, therefore, not entitled to the priority status afforded claims falling under section 507(a)(7).

Fourth, assuming a breach has occurred and that breach gives rise to a priority claim under section 507(a)(7), the $6,000.00 listed in the proof of claim exceeds the $2,600.00 limit permitted by section 507(a)(7). The Trustee asserts therefore that the Claimant could only

---

[4]11 U.S.C. § 507(a)(7) states, "The following expenses and claims have priority in the following order: Seventh, allowed unsecured claims of individuals, to the extent of $2,600 for each such individual, arising from the deposit, before the commencement of the case, of money in connection with the purchase, lease, or rental of property, or the purchase of services, for the personal, family, or household use of such individuals, that were not delivered or provided."

[5]Trustee's Objection to Claim No. 8-1 at ¶9, Jan. 4, 2012, ECF No. 148.

be entitled to priority status to the extent of $2,600.00.

Fifth, the Trustee asserts that the Claimant has failed to sign his proof of claim.

In support of these arguments, the Trustee provided this Court with Trustee's Exhibit 1, the Agreement, and Trustee's Exhibit 2, a DirectBuy Membership Guide, as well as the testimony of Brock Wilson, the Debtor's former President and owner. Mr. Wilson testified as to the Exhibits presented by the Trustee, as well as the membership process, benefits of the membership, and the relationship between the Debtor and its franchisor, DirectBuy.

In response to the Trustee's evidence, the Claimant put forth an argument relying on the language contained in a financing agreement he entered with Beta to finance the purchase of his membership with the Debtor.[6] Claimant entered this document into evidence as Claimant's Exhibit 1.[7] The thrust of Claimant's argument was that the language contained in the financing agreement referenced only one center and contained no mention of any ability to shop online or in other locations. As such, a reading within the four corners of the finance agreement leads to the conclusion that the only thing sold to the Claimant was an opportunity to shop at the Debtor's location, not at another location or through the franchisor's website.

In addition to addressing the Trustee's arguments as to the validity of his claim, the Claimant asserted that the value of his claim was worth $6,000.00 because he purchased the right to enter the Debtor's showroom and purchase goods through the Debtor on any day during the three-year membership. According to the Claimant, that right did not depend on whether it

---

[6]The Claimant represented to the Court that the only signed document he possessed was the financing agreement with Beta. He apparently did not have a copy of and/or did not remember signing the Agreement.

[7]During the hearing, the Court incorrectly referred to the Claimant and his exhibit as Debtor and Debtor's Exhibit 1, respectively.

4

was exercised on day 1 or day 1,094 and, as such, he is entitled to a full refund, including the

interest that accrued as a result of the financing.

### Discussion

This Court has subject matter jurisdiction over this controversy under

28 U.S.C. §§ 1334 and 157(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

Specifically this proceeding deals entirely with the allowance of an unsecured claim against the

bankruptcy estate of Nittany Enterprises, Inc.

This Court recently considered objections filed by the Trustee to similar claims

filed by different claimants in this same case.[8] In those matters, this Court found that no breach

of contract existed between Debtor and the alleged creditors because nothing in the Membership

Agreement signed by the parties required Debtor to maintain a showroom in Roanoke.[9] The

Trustee asserts that this claim is like those previously disallowed by this Court and, therefore,

Mr. Porter's claim should be disallowed on the same grounds. The Court disagrees and finds that

Mr. Porter's claim may be allowed in part.

When a proof of claim is properly filed, it is prima facie evidence of the claim's

validity and amount.  *In re Harford Sand Inc.*, 372 F.3d 637, 640 (4th Cir. 2004); Fed. R. Bankr.

P. 3001(f). Once filed, the burden of rebutting the presumptive effect of the proof of claim falls

on the party objecting to the proof of claim. The objecting party must provide evidence that

negates at least one fact necessary to the claim's legal sufficiency. *Id*. Finally, the burden of

persuasion shifts back to the proponent of the claim if the objecting party is able to meet his

---

[8]*See* Trustee's Objection to Claim No. 1-1, Jan. 4, 2012, ECF No. 149; Trustee's Objection to Claim No. 28, Oct. 10, 2011, ECF No. 25.

[9] *In re Nittany Enterprises, Inc*. at 6-7 (Bankr. W.D. Va. July 6, 2012) (No. 11-70779) (ECF No. 170).

burden. At this stage, the proponent is required to prove the validity and amount of its claim by a preponderance of the evidence. If the proponent is unable to meet this burden, the claim will be disallowed. *Id.*

In a Chapter 7 case, a proof of claim is properly filed when it is filed by a party listed under section 501 of the Bankruptcy Code within the time period outlined in Bankruptcy Rule 3002(c). In this case, the Claimant alleges that he is entitled to payment as the result of the Debtor's purported breach of contract. The Court finds that the Claimant has alleged a valid claim, as defined by section 101(5)(A)[10] and is, therefore, a creditor of the Debtor under section 101(10)(A)[11] of the Code.  As a creditor of this Debtor, Mr. Porter is a permissible party under section 501(a) entitled to file a proof of claim. He filed his proof of claim on June 8, 2011; twenty-seven days after the initial section 341 meeting, and well within the ninety-day period proscribed by Bankruptcy Rule 3002(c). Based on the foregoing, the Court finds that the Claimant's proof of claim was properly filed and is prima facie evidence of the claim's validity and amount. *Harford Sand*, 372 F.3d at 640.

Having found that Claimant's proof of claim is presumptively valid, the focus of the inquiry turns to whether the Trustee has provided sufficient evidence to rebut the presumptive validity of the proof of claim or its amount and/or priority. The Trustee raised two arguments as to the validity of the proof of claim and three arguments as to the amount and priority of the claim. As to validity, the Court finds that the Trustee did not carry his burden in

---

[10]11 U.S.C. §101(5)(A) states, "The term 'claim' means - right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured."

[11]11 U.S.C. §101(10)(A) states, "The term 'creditor' means - entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor."

rebutting the presumptive validity of the proof of claim, but did carry his burden as to the amount of the claim and its priority status.

Validity of the Claim

As this Court stated in its earlier ruling on the Trustee's previous objections, the Court is confined to the four corners of the Agreement, unless ambiguity permits admission of parol evidence to aid in interpreting the terms of the Agreement.[12] The Agreement entered into by the Nittany and Mr. Porter in this case is materially different from the agreements this Court previously considered.[13] Whereas the agreements previously considered by this Court expressly incorporated membership guides and benefit summaries, the Agreement at issue in this case makes no reference to such documents. *Trustee's Exhibit 1* at 1 *In re Nittany Enterprises, Inc*. (Bankr. W.D. Va. Sept. 11, 2012) (No. 11-70779). In fact, the only benefit expressly outlined in the Agreement is the "right to order carpeting, furniture, appliances and merchandise for members' personal use or as bona fide gifts through *said Center*." *Id.* (emphasis added). Further, the Agreement defines "said Center" as "the DirectBuy buying center owned and operated by the below named corporation," which is specified in the agreement as Nittany Enterprises, Inc. *Id.* Lastly, the Agreement contains an integration clause, which states, "The Center is only obligated to arrange benefits as described in this Membership Agreement. No oral promises or statements not contained in this Membership Agreement shall bind or obligate the Center." *Id.* The effect of such a clause is to make Trustee's Exhibit 2 and the relevant testimony by Mr. Wilson parole evidence, which can only be admitted to interpret an ambiguity in the agreement. As the Court

---

[12]*In re Nittany Enterprises, Inc*. at 5 (Bankr. W.D. Va. July 6, 2012) (No. 11-70779) (ECF No. 170).

[13]*Id.* at 5 ("The Membership Agreement explicitly incorporates the 'DirectBuy Membership Guide' into the contractual agreement of the parties.").

7

finds that no ambiguity exists in this Agreement, the benefits referred to in the Membership

Guide and by Mr. Wilson are not incorporated into the Agreement between the Claimant and the

Debtor.

Based on the foregoing, the Agreement at issue here prevents this Court from

finding, as it did previously, that there is no contractual provision that vests in the Claimant a

right to shop exclusively at the Debtor's showroom in Roanoke, since the only benefit expressly

contemplated by the Agreement was the right to shop at the Debtor's showroom in Roanoke.

That contractual right was infringed by the closing of the Debtor's showroom in Roanoke.

Because the Trustee did not provide evidence that negates a necessary element to this breach of

contract claim, the Trustee's first argument fails to rebut the presumptive validity of Mr. Porter's

proof of claim.

In the alternative, the Trustee argues that the Claimant has failed to sign his proof

of claim and, therefore, the Claimant has failed to file a valid proof of claim. The Court finds

such an argument unpersuasive on the facts of this case.

The purpose of Official Form 10 is to permit debtors and their creditors to know

who has asserted a claim against the debtor and in what amount. *Fuller v. Internal Revenue

Service*, 204 B.R. 894, 897 (Bankr. W.D. Pa 1997). In accordance with this purpose, Bankruptcy

Rule 3001(a) requires only that a proof of claim conform substantially to the Official Form. Rule

3001 provides no further guidance as to what constitutes substantial conformation, yet the

Trustee asks this Court to find that the Claimant's signature is a necessary element to a finding

that the proof of claim conformed substantially to Official Form 10.

A signature on a proof of claim is not required by either the Bankruptcy Code or

8

the Bankruptcy Rules. *In re Shabazz*, 206 B.R. 116, 123 (Bankr. E.D. Va 1996). Furthermore, the failure to sign the form does not insulate the filer from penalties for filing a fraudulent claim. *Id.*; *see also In re O'Dell*, 251 B.R. 602 (Bankr. N.D. Ala. 2000). The Court concludes that the absence of a signature, without other deficiencies, will not render a proof of claim in violation of Rule 3001; an unsigned proof of claim may conform substantially to the Official Form.  In determining substantial compliance with the Form, the court will rely upon the purpose of Official Form 10.

In this case, the Claimant's proof of claim provides the Claimant's name, address, and telephone number. The proof of claim further provides an amount, the basis for the claim, as well as the nature and type of claim asserted. Based on the foregoing information, the Debtor, its creditors, and other interested parties knew who the Claimant was, how to contact him, the type and amount of the claim, as well as whether such a claim may be objectionable. Therefore, the Claimant's proof of claim achieved the purpose underlying Official Form 10. As such, this Court finds that the Claimant's proof of claim, despite its lack of a signature, substantially conformed to the Official Form as required by Bankruptcy Rule 3001(a). The Trustee's second argument fails to rebut the presumptive validity of the Claimant's proof of claim.

## Amount and Priority of Claim

In addition to the validity of the claim, the Trustee has objected to the priority status and amount of the proof of claim filed by the Claimant. Based on the evidence presented by the Trustee, the Court finds that the Trustee has met his burden and has rebutted the presumptive validity of the claim's status and amount for the following reasons.

As to the claim's priority status under section 507(a)(7), the Trustee argues that

the $500 paid by the Claimant to the Debtor is not a "deposit" and is, therefore, not entitled to

priority status under section 507(a)(7). Since characterization of the payment as a "deposit" is

necessary to find that the claim has priority, the Trustee need only provide evidence sufficient to

negate the characterization of the payment as a deposit in order to overcome his burden.

This Court has previously defined a "deposit" under section 507(a)(7) to be a

"tendering of a consideration in order to purchase or rent specific property or services with the

expectation that such consideration will be applied toward the purchase or rental of property or

services, or be returned if either the property or services are not delivered or if the condition

precedent for return of the consideration is fulfilled by the depositor." *Wolfe v. Abbey*, 203 B.R.

61, 64 (Bankr. W.D. Va 1996) (interpreting what is now 11 U.S.C. § 507(a)(7)). Although not

expressly stated in this definition, the term "deposit" connotes a temporal relationship between

the time consideration is given and the time the right to use or possess is vested in the individual

giving the consideration. *In re Palmas Del Mar Country Club*, 443 B.R. 569, 575 (Bankr. D.

P.R. 2010) (surveying section 507(a)(7) cases). The temporal aspect is important because it is

what allows section 507(a)(7) to encompass deposits that are a fractional payment, as well as

deposits for the full payment amount. It is this temporal relationship that distinguishes

consideration tendered as a deposit from consideration tendered as a mere payment for goods or

services.

At the hearing, the Trustee provided multiple forms of evidence that showed the

$500.00 paid by the Claimant on November 29, 2008 was not a deposit within the meaning of

section 507(a)(7). First, Trustee's Exhibit 1, the Agreement, showed that there was no

expectation that membership fees would be refunded under any circumstances. The relevant

10

portion reads, "Members understand this program is not sold on a trial basis and that no refund

of membership fees will be made."[14] As such, the consideration was not tendered "with the

expectation that such consideration will ... be returned if either the property or services are not

delivered or if the condition precedent for return of the consideration is fulfilled by the

depositor." *Wolfe*, 203 B.R. at 64.

       Second, the Trustee's witness, Mr. Wilson, testified as to how members were

signed up, how the financing of the membership worked, as well as the financial relationship

between Nittany and Beta. According to Mr. Wilson, individuals purchasing a membership from

Nittany had the option to pay the full price in cash, finance the purchase price, or some

combination of the two. In almost all circumstances, the Debtor received the full purchase price

at the time the membership agreement was signed.[15] Once the membership agreement was signed

and the payment scheme arranged, individuals were able to use their membership in Debtor's

business with no limitation.

       Based on the evidence and testimony presented by the Trustee, the Court finds

that the Trustee provided sufficient evidence to show that the Claimant's right to use the

membership vested immediately. The Agreement between the parties is void of any language

conditioning the vesting of membership rights on the Claimant's payment of the full membership

price. Furthermore, the testimony of Mr. Wilson explained that the benefits a member had upon

the signing of the agreement did not depend on whether the purchase price was financed or paid

---

[14]*Trustee's Exhibit 1* at 1 *In re Nittany Enterprises, Inc.* (Bankr. W.D. Va. Sept. 11, 2012) (No. 11-70779).

[15]Mr. Wilson indicated that, in limited situations, Beta would not provide the Debtor with the membership fee until Beta received its payment from the member. This occurred when the member was deemed to have a higher credit risk. According to Mr. Wilson, the delivery of payment did not affect the vesting of an individual member's rights under the membership agreement.

11

in cash. Thus, the $500 paid by Claimant to the Debtor would not constitute a deposit under section 507(a)(7). The Trustee met his burden of production and shifted the burden of persuasion to the Claimant for the priority status of his claim.

The Court finds that the Claimant has failed to meet his burden of persuading this Court that the $500.00 he paid to the Debtor qualifies as a deposit under section 507(a)(7). At the hearing, Claimant attempted to find language in the Beta financing agreement that referred to the $500.00 as a "deposit." There was no such language in the agreement. Although the terminology of the payment in the contract is not necessarily controlling, the Claimant also failed to provide any evidence that would contradict the declarations in the contract that the $500.00 was not refundable or that his rights under the Agreement did not vest automatically. The Claimant's conclusory statements and references to the $500.00 as a deposit are not sufficient. This Court finds therefore that the Claimant has a general unsecured claim. Mr. Porter failed to show that his claim is entitled to priority status under section 507(a)(7).

As to the claim's amount, the Trustee has argued that the $6,000.00 the Claimant seeks is not his quantum of damages. In fact, the Trustee has gone so far as to say that the Claimant has suffered no damages at all because the Claimant was able to use his membership at the franchisor's other locations, as well as on its website. The latter argument is unpersuasive given our earlier finding that such benefits were not a part of the Agreement between Nittany and Mr. Porter. The Court finds, however, that the Trustee has produced evidence sufficient for a finding that $6,000.00 is an excessive claim.

During the hearing, the Trustee provided evidence as to the purchase price of the membership, $4,960.00, the price paid for the renewal option, $30.00, the terms of the

membership, three years, as well as the date for when the Agreement was entered into and the

date the Debtor closed its doors for business, November 29, 2008 and February 2011,

respectively. Furthermore, the Trustee asserted that the Claimant's rights under the Agreement

were not infringed until the last year of his membership. Based on the evidence presented by the

Trustee, the Claimant was entitled to claim at most $4,990.00 for a breach of the Agreement.

Based on this evidence, the Court finds that the Trustee has met his burden, and the Claimant

must show why his $6,000.00 claim is not excessive.

At the hearing, Mr. Porter testified as to the amount he paid for the membership,

as well as the amount he paid Beta to finance the membership. He provided the Court with

records of his account with Beta through June 2011. As of February 2011, Mr. Porter still owed

Beta approximately $1,445.89 in principal and interest for his membership in the Debtor's

establishment.[16] In addition, Mr. Porter insisted that his rights under the Agreement were not

dependant on when he exercised them and, therefore, the amount of his damages were the same

whether the Debtor breached the agreement on day 1 or day 1,094.[17]

Mr. Porter has failed to carry his burden of persuasion as to the total amount of

his claim. Although the Claimant is correct that he was as entitled to use his membership on day

1,094 as he was on day 1, he is incorrect to believe that a breach of his three year membership in

year three entitles him to a full refund of the membership fee, plus the interest he paid to finance

the purchase. The purchase price was $4,960.00. How the Claimant decided to finance the

---

[16]*Claimant's Exhibit 1* at 6 *In re Nittany Enterprises, Inc.* (Bankr. W.D. Va. Sept. 11, 2012) (No. 11-70779).

[17] Transcript of Record at 29, *In re Nittany Enterprises, Inc.* (Bankr. W.D. Va) (No. 11-70779) (ECF No. 177).

transaction was of his own choosing. The Claimant has failed to provide any evidence or case

law that would persuade the Court to allow him to include in his claim the approximately

$1,010.00 he paid in interest to finance the transaction.

After considering all the evidence, the Court does find, however, that the

Claimant has suffered some pecuniary loss as a result of the Debtor's breach. *In re Terry*, 262

B.R. 657, 662 (Bankr. E.D. Va. 2001) (awarding Claimant damages despite its failure to

persuade the court that its claim was not excessive). First, the Claimant is entitled to receive the

$30.00 he paid for the option to renew his membership in the Debtor's center. The closing of the

Debtor's center was a breach of the option and the consideration paid should be returned to the

Debtor. Second, the Agreement was breached with approximately 302 days remaining on the

1,095 day membership. The number of lost days represents 28% of the entire membership term.

Because the Court has found that Mr. Porter's particular agreement provided him with the right

to purchase goods in the Roanoke store, and that this right was breached when Nittany closed its

doors, the Court believes it is appropriate to quantify the 302 day, or 28%, loss of the purchasing

opportunity. The Court finds that the value of the loss represents a pro-rated amount of the

membership purchase price. *See Nichols Construction Corp. v. Virginia Machine Tool Co. LLC*,

661 S.E.2d 467, 472 (Va. 2008) (finding that a plaintiff need not establish damages with

mathematical certainty, rather he/she must furnish evidence to permit the trier of fact to make a

probable estimate of the contract damages sustained) (citing *Estate of Taylor v. Flair Property

Assocs.,* 448 S.E. 413 (Va. 1994)).[18] The Claimant is owed $1,367.96, which equates to

---

[18]Unlike the case of *Sunrise Continuing Care v. Wright,* 671 S.E.2d 132 (Va. 2009) cited by the Trustee, in this case, Mr. Porter is not seeking a return of the purchase price paid simply because he is unhappy with the services received, but rather because the contract with Nittany cannot be fulfilled.

14

approximately 28% of the $4,960 purchase price.[19] The Court finds that the Claimant has a general unsecured claim in the amount of $1,397.96 and the remaining balance of the Claimant's claim is disallowed.

The Court will contemporaneously issue an Order in accordance with the above decision.

_Rebecca B. Connelly_
Rebecca B. Connelly
U.S. Bankruptcy Judge

---

[19]The $1,367.96 is equal to a pro-rated amount of the purchase price. In numeric terms, $1,367.96 = (302/1095) x $4,960.